**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ASANTE THREE RIVERS MEDICAL CENTER d/b/a )
THREE RIVERS COMMUNITY HOSPITAL )
500 Southwest Ramsey Avenue )
Grants Pass, OR   97527 )
 )
ASANTE ROGUE REGIONAL MEDICAL CENTER )
d/b/a ROGUE VALLEY MEDICAL CENTER )
2825 East Barnett Road )
Medford, OR   97504 )
 )
SOUTHEAST GEORGIA HEALTH SYSTEM – )
BRUNSWICK CAMPUS )
2415 Parkwood Drive )
Brunswick, GA  31520 )
 )
SOUTHEAST GEORGIA HEALTH SYSTEM – )
CAMDEN CAMPUS )
2000 Dan Proctor Drive )
Saint Marys, GA  31558 )
 )
BAYLOR UNIVERSITY MEDICAL CENTER )
AT DALLAS )
3500 Gaston Avenue )
Dallas, TX  75246 )
 )
BAYLOR MEDICAL CENTER AT IRVING )
1901 North MacArthur Boulevard )
Irving, TX  75061 )
 )
BAYLOR MEDICAL CENTER AT GARLAND )
2300 Marie Curie Boulevard )
Garland, TX  75042 )
 )
BAYLOR MEDICAL CENTER AT WAXAHACHIE )
1405 West Jefferson Street )
Waxahachie, TX  75165 )
 )
METHODIST RICHARDSON MEDICAL CENTER )
d/b/a RICHARDSON REGIONAL MEDICAL )
CENTER )
401 West Campbell Road )
Richardson, TX   75080 )

-1-

BAYLOR REGIONAL MEDICAL CENTER AT                )
GRAPEVINE                                        )
1650 West College                                )
Grapevine, TX  76051                             )
                                                 )
BAYLOR MEDICAL CENTER AT CARROLLTON              )
4343 North Josey Lane                            )
Carrollton, TX   75010                           )
                                                 )
BAYLOR JACK AND JANE HAMILTON HEART              )
AND VASCULAR HOSPITAL                            )
621 North Hall Street                            )
Dallas, TX  75226                                )
                                                 )
BAYLOR MEDICAL CENTER AT FRISCO                  )
d/b/a FRISCO MEDICAL CENTER                      )
5601 Warren Parkway                              )
Frisco, TX  75034                                )
                                                 )
BAYLOR SURGICAL HOSPITAL AT FORT WORTH           )
750 12TH Avenue                             )
Forth Worth, TX  76104                           )
                                                 )
BAYLOR REGIONAL MEDICAL CENTER AT                )
PLANO                                            )
4700 Alliance Boulevard                          )
Plano, TX   75093                                )
                                                 )
FAYETTE MEDICAL CENTER                           )
1653 Temple Avenue                               )
Fayette, AL  35555                               )
                                                 )
DCH REGIONAL MEDICAL CENTER                      )
809 University Boulevard East                    )
Tuscaloosa, AL   35401                           )
                                                 )
PICKENS COUNTY MEDICAL CENTER                    )
241 Robert K. Wilson Drive                       )
Carrollton, AL  35447                            )
                                                 )
NORTHPORT MEDICAL CENTER d/b/a DCH               )
NORTHPORT HOSPITAL                               )
2700 Hospital Drive                              )
Northport, AL  35476                             )

LA PAZ REGIONAL HOSPITAL )
1200 West Mohave Road )
Parker, AZ  85344 )
)
COALINGA REGIONAL MEDICAL CENTER )
1191 Phelps Avenue )
Coalinga, CA  93210 )
)
FRESNO SURGICAL HOSPITAL )
6125 North Fresno Street )
Fresno, CA   93710 )
)
THOUSAND OAKS SURGICAL HOSPITAL )
401 East Rolling Oaks Drive )
Thousand Oaks, CA  91361 )
)
MONTROSE MEMORIAL HOSPITAL )
800 South Third Street )
Montrose, CO   81401 )
)
DENVER HEALTH )
777 Bannock Street )
Denver, CO   80207 )
)
PARKVIEW MEDICAL CENTER )
400 West Sixteenth Street )
Pueblo, CO  81003 )
)
ARKANSAS VALLEY REGIONAL MEDICAL )
CENTER )
1100 Carson Avenue )
La Junta, CO  81050 )
)
STAMFORD HOSPITAL )
30 Shelburne Road )
Stamford, CT  06904 )
)
WILLIAM W. BACKUS HOSPITAL )
326 Washington Street )
NORWICH, CT   06360 )
)
BRISTOL HOSPITAL )
41 Brewster Road )
Bristol, CT  06010 )

UNIVERSITY OF CONNECTICUT HEALTH                     )
CENTER d/b/a JOHN DEMPSEY HOSPITAL                   )
263 Farmington Avenue                                )
Farmington, CT 06030                                 )
                                                     )
NCH DOWNTOWN NAPLES HOSPITAL d/b/a                   )
NAPLES COMMUNITY HOSPITAL                            )
350 Seventh Street North                             )
Naples, FL 34102                                     )
                                                     )
LARKIN COMMUNITY HOSPITAL                            )
7031 Southwest 62nd Avenue                      )
South Miami, FL 33143                                )
                                                     )
MONROE HOSPITAL                                      )
4011 South Monroe Medical Park Boulevard             )
Bloomington, IN 47403                                )
                                                     )
THE UNIVERSITY OF KANSAS HOSPITAL                    )
3901 Rainbow Boulevard                               )
Kansas City, KS 66160                                )
                                                     )
COMMUNITY MEDICAL CENTER                             )
2827 Fort Missoula Road                              )
Missoula, MT 59804                                   )
                                                     )
THE NEBRASKA MEDICAL CENTER d/b/a                    )
UNIVERSITY OF NEBRASKA                               )
42nd and Dewey                                  )
Omaha, NE 68198                                      )
                                                     )
NEW YORK DOWNTOWN HOSPITAL                           )
170 William Street                                   )
New York, NY 10038                                   )
                                                     )
SAINT ALEXIUS MEDICAL CENTER                         )
900 East Broadway Avenue                             )
Bismarck, ND 58501                                   )
                                                     )
SANFORD BISMARCK MEDICAL CENTER d/b/a                )
MEDCENTER ONE                                        )
300 North Seventh Street                             )
Bismarck, ND 58501                                   )

OREGON HEALTH & SCIENCE UNIVERSITY        )
HOSPITAL                                  )
3181 Southwest Sam Jackson Park Road      )
Portland, OR   97239                      )
                                          )
SALEM HOSPITAL                            )
890 Oak Street Southeast                  )
Salem, OR   97301                         )
                                          )
THE WESTERLY HOSPITAL                     )
25 Wells Street                           )
Westerly, RI   02891                      )
                                          )
UNITED REGIONAL ELEVENTH STREET           )
CAMPUS d/b/a UNITED REGIONAL              )
1600 Eleventh Street                      )
Wichita Falls, TX   76301                 )
                                          )
BAPTIST SAINT ANTHONY'S HOSPITAL          )
1600 Wallace Boulevard                    )
Amarillo, TX  79106                       )
                                          )
UNIVERSITY MEDICAL CENTER                 )
602 Indiana Avenue                        )
Lubbock, TX   79415                       )
                                          )
LUBBOCK HEART HOSPITAL                    )
4810 North Loop 289                       )
Lubbock, TX  79416                        )
                                          )
UNIVERSITY OF WASHINGTON MEDICAL          )
CENTER d/b/a UNIVERSITY MEDICAL CENTER    )
1959 Northeast Pacific                    )
Seattle, WA   98195                       )
                                          )
CHEYENNE REGIONAL MEDICAL CENTER          )
214 East 23rd Street                      )
Cheyenne, WY   82001                      )
                                          )
ROWAN REGIONAL MEDICAL CENTER             )
612 Mocksville Avenue                     )
Salisbury, NC   28144                     )
                                          )

FRANKLIN REGIONAL MEDICAL CENTER )
100 Hospital Drive )
Louisburg, NC   27549 )
 )
THOMASVILLE MEDICAL CENTER )
207 Old Lexington Road )
Thomasville, NC   27360 )
 )
NOVANT HEALTH MEDICAL PARK HOSPITAL )
1950 South Hawthorne Road )
Winston-Salem, NC   27103 )
 )
NOVANT PRESBYTERIAN ORTHOPAEDIC )
HOSPITAL )
1901 Randolph Road )
Charlotte, NC   28207 )
 )
BRUNSWICK NOVANT MEDICAL CENTER )
240 Hospital Drive Northeast )
Bolivia, NC   28422 )
 )
PRESBYTERIAN HOSPITAL MATTHEWS )
1500 Matthews Township Parkway )
Matthews, NC   28105 )
 )
PRESBYTERIAN HOSPITAL HUNTERSVILLE )
10030 Gilead Road )
Huntersville, NC   28078 )
 )
UPSTATE CAROLINA MEDICAL CENTER )
1530 North Limestone Street )
Gaffney, SC   29340 )
 )
NOVANT HEALTH PRINCE WILLIAM HOSPITAL )
8700 Sudley Road )
Manassas, VA   20110 )
 )
BELLFLOWER MEDICAL CENTER )
9542 East Artesia Boulevard )
Bellflower, CA  90706 )
 )
LOS ANGELES METROPOLITAN MEDICAL )
CENTER )
2231 South Western Avenue )

```
Los Angeles, CA   90018                              )
                                                     )
                              Plaintiffs,            )
                                                     )
              v.                                     )          Civil Action No.
                                                     )
KATHLEEN SEBELIUS, In Her Official Capacity As       )
Secretary of the Department of Health and Human Services)
200 Independence Avenue, S.W.                        )
Washington, D.C.  20201                              )
                                                     )
                              Defendant.             )
_____)
```

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE
## AGENCY DECISION ON MEDICARE REIMBURSEMENT

NOW COMES Plaintiffs (hereinafter referred to as "Plaintiffs", "Providers", or Hospitals), by and through their undersigned attorneys, and for their complaint against Defendant, Kathleen Sebelius, in her official capacity as Secretary of the United States Department of Health and Human Services, state as follows:

### I.   INTRODUCTION

1.   This is a civil action to obtain judicial review of a final agency decision rendered by the Provider Reimbursement Review Board (the "Board", or "PRRB"), denying Providers a "good cause" extension of time to the 180-day filing deadline applicable to "final determinations" made by the Secretary (that deadline pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(2)).

2.   Under the Secretary's regulations, an appeal may be filed within three years of a final determination if good cause is shown for the delay, for example, where a provider was prevented by circumstances beyond its control from filing its appeal within 180 days.  42 C.F.R. §

405.1885(a)-(c).

3.   The Providers filed their appeals within three years of the publication of the Secretary's annual rule-makings governing the Medicare prospective payment system ("PPS") pursuant to the final rules adopted by Defendant, Secretary of the U.S. Department of Health & Human Services, for federal fiscal years ("FFY") 2010 and 2011.

4.   In issuing its final determinations dated August 26, 2013 and August 27, 2013, the Board denied Providers a good cause extension for the filings of their appeals, each of which was filed within the three year extension period pursuant to 42 C.F.R. § 405.1885(a)-(c).

5.   In particular, the Board, "…note[d] the public was on notice of the issues surrounding the RFBNA [i.e., rural floor budget-neutrality adjustment] well before the Providers field this appeal in 2012" and cited the D.C. District Court's decision in favor of the Secretary on this issue as an example of such notice.  *See, Cape Cod Hosp. v. Sebelius,* 677 F. Supp. 2d 18, 29-32 (D.D.C. 2009).  The 'issues' referenced concerned the Center for Medicare and Medicaid's ("CMS") consistent publishing of misinformation surrounding the methodology used to compute the RFBNA as appearing in the Federal Register.

6.   Providers maintain that the district court's holding in *Cape Cod* did not provide Providers with notice of the issues surrounding the RFBNA, and that it was not until the issuance of the FFY 2012 annual IPPS final payment rule that Providers first received any authoritative information pertaining to the deficiencies in the RFBNA computation.  76 Fed. Reg. 51476, 51788 (August 18, 2011).

7.   The Board's denial of a good cause extension constitutes an "abuse of discretion" under the Administrative Procedure Act ("APA") and must be overturned.  *See,* U.S.C. §706(2)(A)

(providing that a court may set aside agency action, findings, and conclusions which are "arbitrary, capricious, *an abuse of discretion,* or otherwise not in accordance with law.")(emphasis added).

## II.  JURISDICTION AND VENUE

8.   This is a civil action brought to obtain judicial review of a final agency decision rendered by the PRRB.

9.   This action is timely filed pursuant to 42 U.S.C. § 1395oo(f)(1) within 60 days of each Plaintiff's receipt of the PRRB's final decision with regard to the controversy at issue in this complaint. Amongst certain Plaintiffs, decisions were rendered on August 26, 2013 and received on August 29, 2013, while amongst the remaining Plaintiffs, decisions were rendered on August 27, 2013 and received on September 3, 2013.

10.   The instant action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 551 et seq) hereinafter referred to as the "Medicare Act" or the "Act", which establishes the Medicare program (the "Medicare Program" or the "Program"), and the Administrative Procedure Act ("APA"), 5. U.S.C. §§ 551 et seq.

11.   This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. § 1331 (federal question).

12.   The total amount of payment due to each Plaintiff at issue in this complaint exceeds $50,000.00.

13.   Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391(e).

14.   This Court has authority to grant the relief requested pursuant to U.S.C. § 1395oo(f), 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-2202.

### III.  PARTIES

15.   Plaintiffs owned or operated or are the successors in interest to the entities that owned or operated the following hospitals that participated in the Medicare program (second column designates Medicare provider number):

| | | |
|---|---|---|
| 1.15.1 | 11-0025 | Southeast Georgia Health System-Brunswick Campus |
| 1.15.2 | 11-0146 | Southeast Georgia Health System-Camden Campus |
| 1.15.3 | 45-0021 | Baylor University Medical Center at Dallas |
| 1.15.4 | 45-0079 | Baylor Medical Center at Irving |
| 1.15.5 | 45-0280 | Baylor Medical Center at Garland |
| 1.15.6 | 45-0372 | Baylor Medical Center at Waxahachie |
| 1.15.7 | 45-0537 | Methodist Richardson Medical Center d/b/a Richardson Regional Medical Center |
| 1.15.8 | 45-0563 | Baylor Regional Medical Center at Grapevine |
| 1.15.9 | 45-0730 | Baylor Medical Center at Carrollton |
| 1.15.10 | 45-0851 | Baylor Jack and Jane Hamilton Heart and Vascular Hospital |
| 1.15.11 | 45-0853 | Baylor Medical Center at Frisco d/b/a Frisco Medical Center |
| 1.15.12 | 45-0080 | Baylor Surgical Hospital at Fort Worth |

1.15.13  45-0890      Baylor Regional Medical Center at Plano

1.15.14  01-0045      Fayette Medical Center

1.15.15  01-0092      DCH Regional Medical Center

1.15.16  01-0109      Pickens County Medical Center

1.15.17  01-0145      Northport Medical Center d/b/a DCH Northport Hospital

1.15.18  03-0067      La Paz Regional Hospital

1.15.19  05-0397      Coalinga Regional Medical Center

1.15.20  05-0708      Fresno Surgical Hospital

1.15.21  05-0749      Thousand Oaks Surgical Hospital

1.15.22  06-0006      Montrose Memorial Hospital

1.15.23  06-0011      Denver Health

1.15.24  06-0020      Parkview Medical Center

1.15.25  06-0036      Arkansas Valley Regional Medical Center

1.15.26  07-0006      Stamford Hospital

1.15.27  07-0024      William W. Backus Hospital

1.15.28  07-0029      Bristol Hospital

1.15.29  07-0036      University of Connecticut Health Center d/b/a/ John
Dempsey Hospital

1.15.30  10-0018      NCH Downtown Naples Hospital d/b/a Naples
Community Hospital

1.15.31  10-0181        Larkin Community Hospital

1.15.32  15-0164        Monroe Hospital

1.15.33  17-0040        The University of Kansas Hospital

1.15.34  27-0023        Community Medical Center

1.15.35  28-0013        The Nebraska Medical Center d/b/a University of
                        Nebraska

1.15.36  33-0064        New York Downtown Hospital

1.15.37  35-0002        Saint Alexius Medical Center

1.15.38  35-0015        Sanford Bismarck Medical Center d/b/a MedCenter One

1.15.39  38-0009        Oregon Health & Science University Hospital

1.15.40  38-0051        Salem Hospital

1.15.41  41-0013        The Westerly Hospital

1.15.42  45-0010        United Regional Eleventh Street Campus d/b/a United
                        Regional

1.15.43  45-0231        Baptist Saint Anthony's Hospital

1.15.44  45-0686        University Medical Center

1.15.45  45-0876        Lubbock Heart Hospital

1.15.46  50-0008        University of Washington Medical Center d/b/a University
                        Medical Center

| | | |
|---|---|---|
| 1.15.47 | 53-0014 | Cheyenne Regional Medical Center |
| 1.15.48 | 34-0015 | Rowan Regional Medical Center |
| 1.15.49 | 34-0036 | Franklin Regional Medical Center |
| 1.15.50 | 34-0085 | Thomasville Medical Center |
| 1.15.51 | 34-0148 | Novant Health Medical Park Hospital |
| 1.15.52 | 34-0153 | Novant Presbyterian Orthopaedic Hospital |
| 1.15.53 | 34-0158 | Brunswick Novant Medical Center |
| 1.15.54 | 34-0171 | Presbyterian Hospital Matthews |
| 1.15.55 | 34-0183 | Presbyterian Hospital Huntersville |
| 1.15.56 | 42-0043 | Upstate Carolina Medical Center |
| 1.15.57 | 49-0045 | Novant Health Prince William Hospital |
| 1.15.58 | 38-0002 | Asante Three Rivers Medical Center d/b/a Three Rivers Community Hospital |
| 1.15.59 | 38-0018 | Asante Rogue Regional Medical Center d/b/a Rogue Valley Medical Center |
| 1.15.60 | 05-0531 | Bellflower Medical Center |
| 1.15.61 | 05-0644 | Los Angeles Metropolitan Medical Center |

16.   Defendant, Kathleen Sebelius is the Secretary of the United States Department of Health

and Human Services ("HHS"), the Federal agency that administers the Medicare Program.  The Secretary is sued only in her official capacity.  For the purposes of this complaint, any reference to the Secretary is meant to refer to her, her subordinate agencies and officials, and to her official predecessors or successors, as appropriate given the context.

17.   The Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA") is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program.

### IV.   MEDICARE PAYMENT FOR INPATIENT HOSPITAL SERVICES

18.   The Federal Medicare program provides health insurance to the aged, blind, and disabled under title XVIII of the Act.  42 U.S.C. § 1395 et seq.

19.   Part A of the Act covers inpatient hospital services.  See, 42 U.S.C. § 1395d(a)(1).

### A.  Prospective Payment System (PPS)

20.    Until 1983, Medicare reimbursed hospitals for the "reasonable cost" of inpatient hospital services furnished to Medicare patients.  42 U.S.C. § 1395(f); See also, Washington Hosp. Ctr. v. Bowen, 795 F.2d 139, 141 (D.C. Cir 1986).

21.    Under the cost reimbursement system, a hospital's allowable operating cost per discharge was limited by a rate-of-increase ceiling, referred to as the "target amount," that was established under section 1886(b) of the Act, 42 U.S.C. § 1395ww(b).  See, Georgetown Univ. Hosp. v. Bowen, 862 F.2d.323, 324 & n.1 (D.C.Cir. 1988).

22.    The Social Security Amendments of 1983 instituted a new prospective payment system – PPS – for the operating costs of inpatient hospital services.  Social Security Amendments of

1983, Pub. L. No. 98-21, § 601.  *See, Georgetown, supra* at 324.

23.    Under PPS, Medicare pays prospectively-established rates for each patient discharge.  42 U.S.C. § 1395ww(d); 71 Fed. Reg. 47870, 47875-76 (Aug. 16, 2006) (final PPS rule for FFY 2007.)

24.    During an initial four-year transition period, these PPS payments were based in part on the hospital-specific "target amount" derived from a hospital's allowable cost per discharge under the prior cost reimbursement system, and based in part on a prospectively-established Federal standardized amount for each diagnosis-related group ("DRG").  42 U.S.C. § 1395ww(d)(1)(A).  *See also, Georgetown, supra* at 324 and n.1; *Washington Hosp. Ctr., supra* at 142.

25.    For the post-transition periods at issue, the PPS payment per discharge is based on the standardized amount, a wage index value reflecting labor costs in the hospital's area that is applied to the labor-related share of the standardized amount, and a weighing factor determined by the Secretary for the DRG assigned to the patient's illness or condition.  *See, generally* 71 Fed. Reg. at 47875-76.

## B. Standardized Amount

26.    The standardized amount is the base payment rate per discharge under the PPS.  42 U.S.C. § 1395ww(d)(3).

27.    The standardized amount is divided into a labor-related share and a non labor-related share. *See,* 42 U.S.C. § 1395ww(d)(3)(E); 71 Fed. Reg. at 47876.

## C. DRGs

28.    The Secretary has established a system for classifying inpatient hospital discharges by diagnosis – specifically, by DRGs – and adjusting PPS payment rates to account for relative differences in resources required to care for patients in different DRGs.  *Se,* 42 U.S.C. § 1395ww(d)(4); 71 Fed. Reg. at 47879 (describing DRGs for FFY 2007).

29.    For example, for FFY 2007, the Secretary had established more than 500 DRGs and had assigned a weighting factor to each DRG.  *See,* 71 Fed. Reg. at 47879, 48167-203 (describing and listing the DRG weights applied for 2007).

## D.  **Wage Index**

30.    The Secretary adjusts the labor-related portion of the standardized amount for differences in hospital wage levels by a factor reflecting relative hospital wage levels in different geographic areas.  *See,* 42 U.S.C. § 1395ww(d)(3)(E).

31.    To accomplish the relative wage-level adjustment, the Secretary calculates and assigns a wage index value to each hospital reflecting the relative wage levels in the hospital's geographic area.  *See,* 71 Fed. Reg. at 48005 (discussing the wage index for FFY 2007); 71 Fed. Reg. 59886, 59903-68 (Oct. 11, 2006) (listing the wage indexes assigned to all hospitals for FFY 2007).  For example, a hospital located in an urban area with hospital wage levels that are 25 percent greater than the national average wage level would have a wage index of 1.25.

## E.  **Wage Index Rural Floor**

32.    In 1997, Congress enacted legislation providing that the wage index for a hospital located in an urban area may not be less than the wage index for hospitals located in rural areas in the same State.  BBA § 4410(a), 42 U.S.C. § 1395ww note.  The 1997 legislation states, in part:

> (a) IN GENERAL.- For purposes of section 1886(d)(3)(E) of the Social
> Security Act (42 U.S.C. § 1395ww(d)(3)(E)) for discharges occurring on or
> after October 1, 1997, the area wage index applicable under such section to
> any hospital which is not located in a rural area … may not be less than the
> area wage index applicable under such section to hospitals located in rural
> areas in the State in which the hospital is located.

*Id.*

33.    The above-quoted provision, referred to as the "rural floor," yields payments to some
urban hospitals that are greater than the payments that otherwise would have been made to those
hospitals.

34.    The rural floor is effective for all Federal fiscal years after the fiscal year ended
September 30, 1997. *Id.*

35.    The 1997 legislation also required the Secretary to adjust the wage index for the PPS to
account for the effect of the rural floor.  BBA § 4410(b).  The statute states, in pertinent part:

> (b) IMPLEMENTATION. – The Secretary of Health and Human Services shall
> adjust the area wage index… in a manner which assures that the aggregate
> payments made under [the PPS] in a fiscal year for the operating costs of inpatient
> hospital services are not greater or less than those which would have been made
> in the year if this section did not apply.

*Id.*

36.    The above-quoted provision requires the Secretary to adjust the wage index as necessary
to ensure that the rural floor is implemented in a budget neutral fashion, i.e., to ensure that PPS
payments "are not greater or less" than they would have been if there were no rural floor.

## V.  ERRORS IN THE PPS PAYMENT DETERMINATION AT ISSUE

A. **CMS's Misstatements Regarding Its Method of Calculating the Rural Floor Budget Neutrality Adjustment for FFY 2007**

37.     Each year, CMS issues an annual IPPS rulemaking for the purpose of announcing its payment rates and other policies to the hospital community.  Since the inception of the rural floor budget-neutrality adjustment ("RFBNA"), the adjustment factors to the payment rates required to achieve budget neutrality under the RFBNA were included in these annual updates.  *See,* e.g., 63 Fed. Reg. 41006-41010 (Jul. 31, 1998); 64 Fed. Reg. 41544-41549 (Jul. 30, 1999); 65 Fed. Reg. 47111-47116 (Aug. 1, 2000); 66 Fed. "Reg. 39939-39946 (Aug. 1, 2001); 67 Fed. Reg. 50120-50126 (Aug. 1, 2002); 68 Fed. Reg. 45474-45480 (Aug. 1, 2003); 69 Fed. Reg. 49273-49282 (Aug. 11, 2004); 70 Fed. Reg. 47491-47498 (Aug. 12, 2005); 71 Fed. Reg. 47870-48147 (Aug. 18, 2006); 72 Fed. Reg. 48165-48166 (Aug. 22, 2007); 73 Fed. Reg. 48434, 49070-49072 (Aug. 19, 2008).

38.     CMS indicated in these annual updates that the RFBNA was being computed in a **budget neutral** manner.  *See,* 71 Fed. Reg. at 48147 ("Section 4410 of Pub. L. 105-33 provides that, for discharges on or after October 1, 1997, the area wage index applicable to any hospital that is not located in a rural area may not be less than the area wage index applicable to hospitals located in rural areas in that State.  This provision is required by section 4410(b) of Pub. L. 105-33 to be **budget neutral.**  Therefore we include the effects of this provision in our calculation of the wage update budget neutrality factor.") (emphasis added).  However, contrary to these representations, the adjustment factors were not budget neutral, but rather resulted in net savings to the government.  Rather than adjusting area wage indexes themselves to achieve budget neutrality, the Secretary adjusted the standardized amount.  Thus, if the rural floor threatened to increase aggregate payments in a particular year, a downward adjustment to the standardized amount was

applied to offset the effect of the rural floor. The Secretary then carried forward the adjusted standardized amount year to year.

As a result, CMS duplicated prior adjustments by each year calculating the full amount of the adjustment necessary to counteract the effect of the rural floor and then applying that adjustment to a figure that included adjustments carried over from previous years. CMS then reduced the standardized amount to account for the full difference between these two figures, notwithstanding that the standardized amount being carried over already included reductions from prior years' rural floor budget-neutrality adjustments. The cumulative effect of these improperly duplicative budget neutrality adjustments was to reduce the payment levels below what they otherwise should have been. In other words, instead of being budget neutral as required by statute, this procedure resulted in hospitals being paid *less* than they would have been paid in the absence of the RFBNA and therefore *less* than the amount mandated by Congress.

39. It was only accidentally that the plaintiff in the *Cape Cod* case became aware of the deficiencies in the RFBNA computation, as a result of an inadvertent disclosure by a CMS employee in a May, 2006 e-mail to a consultant for Cape Cod Hospital. *See, Cape Cod,* 630 F.3d at 207-208. However, when the consultant brought the error to the attention of CMS, the agency did not even acknowledge the comment, nor did it take any affirmative action to correct the problem, in its 2007 IPPS update. *Id.* at 208. CMS further failed to disclose to hospitals the information which it clearly had in its possession pertaining to the deficiencies in the computation of the RFBNA.

40. The Secretary deliberately failed to inform the hospital community regarding these errors

in its computation of the RFBNA, notwithstanding that the Secretary was at least since 2006 aware that its method of computing the RFBNA was in violation of the law.

41.  Providers had no reasonable means of identifying the errors involved in the Secretary's computation of the rural floor budge neutrality adjustment.  The Secretary's budget-neutrality calculations are not published.  As a result, there was no readily available means of learning of the Secretary's error, or even of duplicating the Secretary's calculations to discover the error. Providers were therefore precluded from obtaining the knowledge required to timely file their appeals in connection with the errors in the computation of the RFBNA.  *See,* 42 U.S.C. § 1395oo.  Once again, plaintiffs in *Cape Cod* only discovered the error by happenstance through a passing comment in a private e-mail from a CMS employee.

42.  In the 2008 proposed rule, CMS proposed to make a one-time positive adjustment of 1.002214 to the standardized amount for FY 2008 to address the transition to a noncumulative system of budget neutrality adjustment.  However, this adjustment left in place the improper cumulative adjustments for all prior years.  *See, generally, Cape Cod Hosp. v. Sebelius,* 630 F.3d 203 (D.C.Cir. 2011).

43.  By letter dated June 11, 2007, the commentator timely submitted comments on CMS's proposed PPS rule for FFY 2008.

44.  The June 11, 2007 comment letter stated, *inter alia:*

a.  CMS should explain the basis, purpose, and reason for the proposed change in implementation of the rural floor budget neutrality requirement;

b.  CMS should disclose any known errors in the agency's prior calculations of the rural floor budget neutrality adjustment and identify the impact of those errors on the

current standardized amount that would be applied under the final rule for 2008;

c.    CMS should explain the basis, purpose, and calculation of the proposed "Rural Floor Adjustment" that would increase the standardized amount by 0.2214 percent for 2008;

d.    CMS should correct the standardized amount for the effects of known errors in its calculation of the rural floor budget neutrality adjustment in prior-periods and pay affected hospitals the additional sums due as a result of such correction.

### B. Final Rule for 2008

45.    The preamble to the final PPS rule for 2008 acknowledged that "[m]any commentors requested additional information as to the purpose" of the proposed change in implementation of the rural floor budget neutrality adjustment.  72 Fed. Reg. at 47330.  The preamble, however, does not state the basis, purpose or reason for the proposed change in implementation of the rural floor budget neutrality requirement.  *See, Id.*

46.    The preamble to the final PPS rule for 2008 acknowledged the June 11, 2007 comment claiming that the methodology for applying the rural floor budget neutrality adjustment for prior years was flawed but, instead of admitting the fact of the matter, CMS remained agnostic:

> With regard to alleged errors in FYs 1999 through 2007, our calculation of Budget neutrality in past fiscal years is not within the scope of this rulemaking. Even if errors were made in prior fiscal years, we would not make an adjustment to make up for those errors when setting rates for FY 2008.

72 Fed. Reg. at 47330 (emphasis added).

47.    The preamble to the final rule for 2008 did not address whether the proposed change in

implementation of the rural floor budget neutrality requirement would not fix problems for prior, current or future fiscal years stemming from errors in CMS's prior calculations of the rural floor budget neutrality adjustments to the standardized amounts in prior years.  *See,* 72 Fed. Reg. at 47330.

### C.   Error in the Final Determinations for 2010-2011

48.    Beginning in 2008, the rural floor budget-neutrality adjustment was applied to the wage index, rather than the standardized amount.  CMS also made a one-time positive adjustment of 1.002214 to the standardized amount for fiscal year 2008 to address the transition to a noncumulative system of budget neutrality adjustment.

49.    This adjustment left in place the improper cumulative adjustments for all prior years. *See generally, Cape Cod Hosp. v. Sebelius,* 630 F.3d 203 (D.C. Cir. 2011).  As a result, the deficiencies in the prior years' budget neutrality computations were carried over into the 2010 and 2011 fiscal years at issue in this case.

### D.   History of Court Decisions

50.    When the Secretary's RFBNA methodology was challenged in district court in *Cape Cod,* 677 F. Supp 2d. at 31, the district court held in favor of the Secretary, finding that "[n]othing in the language of the statute requires the Secretary to recalculate the budget neutrality factors for prior years.  The statute only requires the Secretary to ensure budget neutrality in the 'fiscal year' for which the adjustment is applicable."  In addition, the court held that it found, "…it reasonable to interpret the [budget neutrality]  provision to require that aggregate payments in the fiscal year not be greater or less than those that would have been made in the fiscal year without such adjustment", so that mistakes made in prior years were irrelevant.

*Id.*

51.     The D.C. Circuit Court, however, overturned the District Court's decision in *Cape Cod* (*see,* 630 F.3d 203 (D.C.Cir. 2011)) where it held that the Secretary's application of the rural floor budget neutrality adjustment for FFY 2007 and 2008 was improperly computed as a result of these methodological/mathematical errors on the part of the Secretary. While the years specifically before the court in *Cape Cod* were FFY 2007 and 2008, the court's decision and CMS's subsequent acquiescence made it clear that the calculation error encompassed years 1999 through 2012. *See, e.g.,* 76 Fed. Reg. 51476 (Aug. 18, 2011).

52.     Adjustments for FFY 2012 were implemented in the 2012 IPPS rule issued on August 18, 2011.   The Secretary provided the calculations used to arrive at the amount of the 2012 adjustment, which necessarily included remodeled calculations for FYEs 1999-2006.   76 Fed. Reg. 51476, 51788 (Aug. 18, 2011).

53.     The Secretary had not, prior to this Federal Register notice, publicly quantified the amount of the adjustment required to compensate for the errors made in applying the RFBNA for FYEs 1999-2006.   The adjustment for FYE 2012 also did not provide retroactive relief for the shortfalls resulting from the improper computation of the RFBNA for any years prior to the years at issue in *Cape Cod.*

## VI.   REVIEW OF PPS PAYMENT DETERMINATIONS

### A.   <u>Administrative Appeals</u>

54.   A provider may file an appeal to the Provider Reimbursement Review Board ("PRRB") if it is "….dissatisfied with a final determination of the Secretary as to the amount of the payment. *See,* 42 U.S.C. § 1395oo(a)(1)(A)(ii).

55.     In addition to having the authority to make substantive decisions concerning Medicare under 42 C.F.R. § 405.1873, the Board is authorized to decide questions relating to its jurisdiction including whether to grant, for **good cause,** an extension to the 180 day filing deadline of up to a period of three years.  42 C.F.R. § 405.1885(a)-(c).

56.     The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877.  The Secretary has delegated her authority under the statute to review PRRB decisions to the CMS Administrator.

57.     Unless the Secretary reverses, affirms, or modifies the Board's decision with respect to a provider's appeal within 60 days of the date the provider is notified of the decision, the decision constitutes a final administrative action.   42 U.S.C. § 1395oo(f); 42 C.F.R. §§ 405.1875, 405.1877.

## B.  Good Cause Filing Extensions

58.     Except for good cause, 42 C.F.R. § 405.1885(a)-(c), appeals should be filed within "180 days after notice of the Secretary's final determination."  *Id.* at § 1395oo(a)(3).

59.     Upon a showing of extraordinary circumstances beyond a provider's control – i.e., *good cause* – the Board may extend the normal 180-day time limit for an appeal provided that the request was made within three years of the date of receipt of the final determination.  42 C.F.R. § 405.1836(b),(c).

60.     In the matter of *Sebelius v. Auburn Regional Medical Center,* ___ U.S. ___, 133 S. Ct. 817 (2013), the U.S. Supreme Court held that the 180-day time limit set out under 42 U.S.C. §

1395oo(a)(3) is not "jurisdictional" – *i.e.,* meaning that the time limit may be enlarged by an agency or a court, *See, Id. at* 821-22.

61.    The *Auburn* Court held therefore, that "…[the 180-day] limitation therefore does not bar the modest extension contained in the Secretary's regulation." *Id.* at 826.

62.    Supreme Court Justice Sotomayor wrote in her concurring opinion that "….[w]e would face a different case if the Secretary's regulation did not recognize an exception for good cause or defined good cause so narrowly as to exclude cases of fraudulent concealment and equitable estoppel." *Id.*

63.    The Secretary's final rule governing Medicare inpatient prospective payments for Federal Fiscal year – FFY – are considered "a final determination of the Secretary as to the amount of…. payment," and is therefore subject to appeal under 42 U.S.C. § 1395oo(a).  *See, e.g., District of Columbia Hospital Association Wage Index Group Appeal* (HCFA Adm. Dec. Jan. 15, 1993). The date the rulemaking is published in the Federal Register is considered the date of notice for purposes of calculating the appeal filing deadlines.  *See,* 44 U.S.C. § 1507.2010.

**VII.   PROCEDURAL HISTORY AND MATTERS SPECIFIC TO THIS CASE**

A.       <u>The Providers' Board Appeal and the Board's Decision</u>

64.    Each of the Plaintiff hospitals contend that they timely filed a group appeal to the PRRB from the Secretary's final determination of the PPS payment rates, under the three-year good cause extension provision, ranging in group appeals as follows:

- 1998-2011 RFBNA Equitable Tolling Group, PRRB case number 12-0169GC;

- 1998-2012 RFBNA Equitable Tolling Group, PRRB case number 12-0167GC;

- 1999-2012 RFBNA Equitable Tolling CIRP Group, PRRB case number 12-0254GC;

- 1999-2011 RFBNA Equitable Tolling Group, PRRB case number 12-0165GC;

- 1998-2012 RFBNA Equitable Tolling Group, PRRB case number 12-0162G;

- 1998-2011 RFBNA Equitable Tolling Group, PRRB case number 12-0229GC;

- 1999-2009, 2011-2012 RFBNA Equitable Tolling Group, PRRB case no. 12-0275GC.

65.  Each group appeal stated an amount in controversy in excess of $50,0000, as required under 42 C.F.R. §§ 405.1837(a)(3), 405.1839(b).

66.  The Secretary's final rule for FFY 2010 was published on August 27, 2009, the 180-day period to file an appeal from this rule expired on February 23, 2010, and the deadline to file an appeal from this "final determination" could be extended, for *good cause*, until August 27, 2012. Since each Provider filed their appeals on this 2010 rule-making before August 27, 2012, they were therefore, within the three year good cause filing extension period to appeal from the FFY 2010 final rule.

67.  The Secretary's final rule for FFY 2011 was published on August 16, 2010,  and the deadline to file an appeal from the "final determination" could be extended, for good cause, until August 16, 2013.

68.  Since each Provider filed its appeal of this 2011 rule-making before August 16, 2013, each was therefore, within the three year extension period to appeal from the FFY 2011 final rule.

69.  By letters dated August 26, 2013 and August 27, 2013, the Board issued its final decisions in which it denied Providers' requests for equitable tolling, pursuant to the Supreme Court's recently issued decision in *Auburn, supra,* and held that the Providers did not otherwise,

"…demonstrate good cause for late filing for those appeals that were filed within three years of the publication of the Federal Register notices." *See,* Attachments, A through D, each dated August 26, 2013, and E through F, each dated August 27, 2013.  The Board, therefore, dismissed the appeals as, "not timely filed." *Id.*

70.   The Board offered a single reason for denying each request for good cause extensions: "The public was on notice of the issues surrounding the RFBNA well before the Providers filed [this] appeal…" *See, e.g., Cape Code Hosp. v. Sebelius,* 677 F. Supp 2d 18, 29-32 (D.D.C. 2009)."

71.   The August 26 and 27, 2013 Decisions also provided that the "[r]eview of this determination is available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875 and 405.1877." *Id.*

72.   The Providers each properly commenced this action in this Court pursuant to 42 U.S.C. § 1395oo(f)(1) within sixty days of notice of the Board's decision.

**B. The Board's Denial of a Good Cause Extension is an Abuse of Discretion**

73.     CMS's conduct in connection with its erroneous Rural Floor Budget Neutrality Adjustment – in particular, its concealment of the existence and the extent of its error and its affirmative misstatements regarding how the adjustment was calculated – prevented the Providers from filing their appeals within 180 days of the publication of the FFY 2010 and 2011 final rules.  The doctrine of equitable estoppel, therefore precludes the Secretary from invoking the 180 day filing deadline at least insofar as the determination is still within the three year window for a good cause extension.

1.   CMS's Conduct Prevented the Providers from Filing Their Appeals

Within 180 Days of the Publication of the Final Rules

74.   As set forth above, by repeatedly refusing to disclose the specific data that were employed in CMS's payment simulation model to calculate budget neutrality adjustments for the effect of the rural floor, *see, e.g.,* 71 Fed. Reg. at 48147; 70 Fed. Reg. at 47493; 69 Fed. Reg. at 49275; 68 Fed. Reg. at 45475-76, and consistently incorrectly describing the simulation model used in the calculation of the budget neutrality adjustment, CMS prevented the Providers from timely appealing within 180 days of the FFY 2010 and 2011 final rules.

75.   Even after CMS was advised in writing of its error, CMS pursued a path of obfuscation and concealment, first by ignoring solicited comments pointing out its error, then by making "black box" adjustments without publicly issuing any reasonable explanation or guidance for its methodology.  s*upra.*

76.   CMS's conduct in this regard amounted to more than merely vague or misleading statements; it instead constituted affirmative misstatements that mislead the Providers and, upon information and belief, engendered confusion among similarly situated providers.

77.   Providers have the right to expect that what the agency tells them is true.

78.   Under principles governing equitable estoppel, the Secretary should therefore be stopped from denying a good cause filing extension when it was the agency's own misstatements and obfuscation that prevented the Providers from filing timely appeals.

79.   Estoppel, "…is applied against a person whose words or conduct have induced another to act or refrain from acting in a manner that has resulted in harm or loss or would do so if the responsible person is not stopped."   *See,* David K. Thompson, *Equitable Estoppel of the*

*Government,* 79 Colum. L. Rev. 551, 552 (1979).  Estoppel is an "equitable doctrine" and "a hallmark of the doctrine is its flexible application." *Heckler v. Cmty. Health Services,* 467 U.S. 51, 60 (1984).

80.   Unlike in *Heckler,* where the Court denied estoppel, here the Providers relied upon statements from CMS itself and not merely some intermediary.   In addition, the Providers suffered a true detriment, beyond the "inability to retain money that it should never have received in the first place," *id.* at 61, because had the Providers timely filed an appeal, they would have received the benefit of the Circuit Court's decision in *Cape Cod,* and a correction to their payment amounts.

2.   <u>The Providers Did Not Have Notice of CMS's Rural Floor Budget Neutrality Adjustment Error, or Any Remedy for that Error Until the D.C. Circuit's Decision in *Cape Cod.*</u>

81.   To prevail on an appeal, providers must prove not only that the agency made a mistake, but that there is a ***legal*** remedy for that mistake.

82.   This latter fact was not established until the Circuit Court's decision in *Cape Cod, supra* at 216-217.

83.   The final rule for FFY 2010 was issued on August 27, 2009 and the 180-day appeal period to file an appeal on this rule expired on February 23, 2010 – almost a year before the D.C. Circuit's decision in *Cape Cod, supra,* and a year and a half before CMS published preamble language interpreting that decision on August 18, 2011.

84.   The final rule for FFY 2011 was published on August 16, 2010 and the 180-day appeal period to file an appeal from this rule expired on February 12, 2011 – just a month after the D.C.

-29-

Circuit's decision in *Cape Cod, supra,* and six months before CMS published preamble language interpreting that decision on August 18, 2011.

85.   Expecting Providers to file an appeal within one month of the Circuit Court's decision in *Cape Cod, supra,* is unreasonable as proven by the fact that providers are generally afforded at least *six months* to file appeals.  In analogous situations, courts have held that filing an appeal within eight months of a Circuit Court's decision was not unreasonable. *See, Monmouth Medical Center v. Thompson,* 257 F. 3d at 807, 814 (D.C. Cir. 2001) ("While the Ruling [being appealed] was issued in 1997, the Court of Appeals did not decide *Monmouth* – which was announced for the first time that the Ruling constituted notice to the intermediaries of the inconsistency with applicable law of the Secretary's prior interpretation – until July 27, 2001") (emphasis added).

86.   In addition, because the Secretary did not quantify her error until the August, 2011 rulemaking, prior to that date the hospital could not ascertain the amount of the damages to ensure that the $50,0000 amount in controversy – the jurisdictional requirement for PRRB appeals – was met. *See, HCA Health Services of Oklahoma, Inc. v. Shalala,* 27 F.3d 614, 622 (D.C. Cir. 1994) (holding open the question of whether a reopening for a "cost item [that]… could not have been appealed when the original NPR was issued because it [the provider] did not satisfy the $10,000 jurisdictional threshold" should be given special consideration.)

87.   It was an abuse of discretion for the Board to hold that providers had notice of this issue from the District Court's decision in *Cape Cod* because that decision held that's the Secretary calculated current year RFBA **correctly** because she was under no obligation to fix past errors. *Id.* At 31 (finding that it was "reasonable to interpret the [budget neutrality] provision to require that aggregate payments in the fiscal year not be greater or less than those that would have been

made in the fiscal year without such adjustment", so that mistakes made in prior years were irrelevant).  However, by statute, the Secretary is required to make annual adjustments in the wage index and standardized payment amounts which are used by the Secretary for the purpose of determining annual IPPS payment rates. *See,* Social Security Act, §§ 1886(d)(3).  By statute, the Secretary must publish in the Federal Register a proposed rule outlining any adjustment to be made in the amount of payments under the IPPS system.  This proposed rule must be published not later than April 1 of each fiscal year.  *See,* Social Security Act, §§ 1886(e)(5).  By statute, the Secretary must publish not later than August 1 of each fiscal year a final rule describing any adjustments to the IPPS payment rates for the upcoming fiscal year. *Id.* These annual payment rules are the sole authoritative source of guidance to the hospital community on all matters affecting IPPS payment rates.  The Secretary did not provide any authoritative guidance concerning the deficiencies in the RFBNA computation until the issuance of the 2012 IPPS final payment rule on August 18, 2011.  76 Fed. Reg. 51476, 51788 (August 18, 2011).

## VIII.  RELIEF REQUESTED

88.  Providers respectfully request that the Court enter an Order:

A.   Holding that the Board denied the Plaintiffs' request for a good cause extension to the 180 day filing period and remanding to the Board requiring the Board to grant Providers a good cause extension for their appeals of the FFY 2010 and FFY 2011 final rules, and to consider the merits of the Providers' appeals;

B.    Remanding to the Board with instructions to properly compute the amounts owing to the Hospitals using the correct budget neutrality adjustment factors;

C.   Requiring the Secretary to pay legal fees and costs of suit incurred by the providers;

-31-

and,

    D.   Providing such other relief as the Court may consider appropriate.

                                Respectfully Submitted,

*ALAN J. SEDLEY*

_____
ALAN JAY SEDLEY, Attorney At Law (Bar
No. OH0017)
21300 Victory Boulevard  Suite 420
Woodland Hills, CA   91367
Phone: (818) 601-0098
Counsel For Plaintiffs